IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS LEGASPY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 C 4700 |
| | ) | |
| FINANCIAL INDUSTRY REGULATORY | ) | Judge Joan H. Lefkow |
| AUTHORITY, INC., a Delaware not-for- | ) | |
| profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Carlos Legaspy's motions for a temporary restraining order (dkt. 4) and a

preliminary injunction (dkt. 10) against the Financial Industry Regulatory Authority, Inc.

("FINRA") are denied.[1]

## BACKGROUND

In February 2019, Alberto Jose Nieves and Gladys Veronica Anton (the "Claimants")

filed a statement of claim against Legaspy, Insight Securities, Inc., and Pershing LLC in the

FINRA arbitration tribunal seeking monetary damages for losses in their brokerage account at

Insight. (Dkt. 1 ¶ 13.) Legaspy does not specify which issues are being arbitrated but claims that

the Claimants seek $2.765 million, loan interest, dividends, and lost appreciation. (*Id.* ¶ 13.) The

parties signed a FINRA uniform submission agreement, which detailed that "in the event a

---

[1] This court has jurisdiction under 28 U.S.C. § 1332 because the citizenship of each party is
completely diverse and the amount in controversy exceeds $75,000. The court does not rest jurisdiction
under 28 U.S.C. § 1331 because, as explained below, Legaspy's only claim arising under federal law is
facially meritless and likely to be dismissed on a proper motion, leaving only a state-law breach of
contract claim. Although venue is almost certainly improper under 28 U.S.C. § 1391(b) because FINRA
does not reside here and none of the events or occurrences took place here, FINRA has not challenged
venue for purposes of this motion.

hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of FINRA…" and that "the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure." (*Id.* ¶ 29.) The evidentiary hearing in the arbitration was originally scheduled to begin on August 17, 2020 in Boca Raton, Florida. (*Id.* ¶ 14.)

Due to the COVID-19 pandemic, however, FINRA informed the parties on June 23, 2020 that the in-person hearing was canceled and would be either rescheduled or held electronically via Zoom or telephone conference by joint agreement or panel order. (*Id.* ¶ 15.) Two days later, on June 25, 2020, the panel ordered the hearing to be conducted remotely via FINRA's virtual hearing services on its original date of August 17, 2020. (*Id.* Exh. B.) Legaspy and Insight noted their objection at a pretrial hearing and in a letter, both in late July. (*Id.* Exh. C.)

On August 11, Legaspy commenced this action against FINRA. He claims that FINRA breached its Code of Arbitration Procedure and the uniform submission agreement (Count I), denied Legaspy due process (Count II), and requests injunctive relief (Count III). Also on August 11, Legaspy moved for a temporary restraining order to stop the scheduled remote arbitration. (Dkt. 4.)

Legaspy argues that remote proceedings will be cumbersome and procedurally irregular. The Claimants are from Argentina and will require an interpreter. (Dkt. 1 ¶ 14.) There are dozens of witnesses and hundreds of documents that would have to be shared remotely. (Dkt. 5 Exh. 1 ¶ 12.) He also argues that by the time the hearing is over, he will have spent so much on attorneys' fees that he will have exhausted his insurance coverage. (*Id.* ¶¶ 7–8.) And if he loses the arbitration, FINRA will deduct any award against his net capital, immediately making Insight undercapitalized under the FINRA rules. (*Id.* ¶¶ 5–6, 9–10, 15.) He therefore posits that he will

be effectively forced out of business before he could move to vacate any award against himself. (*Id.* ¶ 15.)

## **LEGAL STANDARD**

The standard for seeking a temporary restraining order and a preliminary injunction are the same. *USA-Halal Chamber of Commerce, Inc.* v. *Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019). A party seeking a temporary restraining order must demonstrate that: (1) its claim has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) absent injunctive relief, it will suffer irreparable harm in the period prior to final resolution of its claim. *Girl Scouts of Manitou Council* v. *Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party satisfies these threshold requirements, the court must balance the threatened injury to the moving party with the threatened harm the injunction may inflict on the nonmovant. *Id.* The court also must consider the public interest in either the grant or denial of the injunctive relief. *Id.* In applying these criteria, the court uses a "sliding scale" approach: if a claim is very likely to succeed on the merits, less harm to the plaintiff will be required to justify injunctive relief and vice versa. *Abbott Labs.* v. *Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

## **ANALYSIS**

### I.     **Likelihood of Success on the Merits**

#### A.     **Breach of Contract**

Count I claims that FINRA breached two contracts: The uniform submission agreement and the FINRA Code of Arbitration. Count III is styled as a separate count for injunctive relief but is in fact just another count for breach of contract, because "an injunction 'is an equitable

remedy, not a separate cause of action.'" *CustomGuide* v. *CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1002 (N.D. Ill. 2011) (citation omitted).

### 1. Uniform Submission Agreement

Legaspy is not likely to succeed on his claim that FINRA breached the uniform submission agreement because FINRA does not appear to be a party to that agreement. (Dkt. 1 at Exh. D.) Rather, the uniform submission agreement is between the Claimants and Legaspy. Each agrees to submit to FINRA jurisdiction in exchange for the other's promise to do the same. (*Id.*) Legaspy does not allege that FINRA is one of the "parties" mentioned in the submission agreement, nor that FINRA signed the agreement. Indeed, reading FINRA as a party would make little sense. FINRA would have to agree, among other things, to submit a controversy to itself, read its own procedures and agree to be bound by them, and agree to abide by its own award and consent to judgement thereon. (Dkt. 1 Exh. D.)

Legaspy argues that because FINRA requires its members and associated persons to sign such agreements, it is necessarily a party to the uniform submission agreement. The court disagrees. Although FINRA required Legaspy to agree to terms with the Claimants, that does not make FINRA itself a party to the agreement.

Even if FINRA were a party to the uniform submission agreement, Legaspy would not be likely to succeed on his breach of contract claim. As explained in more depth below, under the Federal Arbitration Act, the court does not oversee arbitrators' procedural rules. *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588 (2002). Moreover, Legaspy inappropriately restricts the meaning of the word "place" in the submission agreement in exactly the same way he restricts the word "location" in the FINRA Rules.

### 2.     FINRA Code of Arbitration

That leaves the FINRA Code of Arbitration, which is a contract between FINRA and its members and associated persons. *See Multi-Financial Sec. Corp.* v. *King*, 386 F.3d 1364, 1367 (11th Cir. 2004). But several considerations make Legaspy unlikely to succeed on his claim that FINRA breached its own Code of Arbitration. Most importantly, whether or not there is a contract, courts do not police the procedures of arbitration. Under the Federal Arbitration Act, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Lumbermens Mut. Cas. Co.* v. *Broadspire Management Servs., Inc.*, 623 F.3d 476, 480 (7th Cir. 2010) (quoting *Howsam*, 537 U.S. at 84–85). A federal court's limited role is to "[r]eview . . . at the beginning or the end, but not in the middle" of an arbitration. *Blue Cross Blue Shield of Mass., Inc.* v. *BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011). That is, courts may decide before the arbitration whether a dispute is arbitrable at all—not at issue here. 9 U.S.C. § 4. Otherwise, parties must wait until the arbitration is over to return to court on a petition to confirm or vacate an award. 9 U.S.C. §§ 9– 10. Once the case has been submitted to arbitration, federal courts leave it to arbitrators to sort out their own procedures. *Howsam*, 537 U.S. at 84. Indeed, in *Howsam*, the court applied that rule to FINRA's predecessor's procedures, holding that "NASD arbitrators, comparatively more expert about their own rule's meaning, are comparatively better able to interpret and apply it." *Id.* at 80. Whether FINRA can or should conduct a hearing remotely is a question of procedure that FINRA, not this court, must decide.

Even if the court could review FINRA's arbitral procedures mid-arbitration, Legaspy likely would not succeed. FINRA Rule 12409 gives "the panel . . . the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and

binding upon the parties." The panel did precisely that, concluding that the "location" for its hearing under Rule 12213(a) will be remote. Even on the court's independent review, Rule 12213(a) appears to permit such an interpretation. That rule provides, "The Director will decide which of FINRA's hearing locations will be the hearing location for the arbitration." Rule 12213(a)(1). Here, the Director decided to make "virtual hearing services (via Zoom and teleconference)" available "to parties in all cases by joint agreement or by panel order." (Dkt. 1 Exh. A.) The panel then ordered the case to proceed remotely. (Dkt. 1 Exh. B.) Thus, even without the Federal Arbitration Act's significant deference to arbitral procedures and Rule 12409's further deference, the procedure in this case complied with the FINRA Rules.

Legaspy's arguments to the contrary are unpersuasive. He first argues that proceedings cannot be remote because parties are entitled to "attend all hearings" under Rule 12602(a). But he may still "attend" the hearing remotely, just as he did for the telephonic temporary restraining order hearing in this court on August 12, 2020. He also argues that because the rules specify that the hearings will take place at some "location" but do not mention remote hearings, remote hearings are categorically prohibited. But the parties, witnesses, and arbitrators are still "located" somewhere in a remote proceeding, it is simply not all the same location. *See Phye* v. *Thill*, No. 06-1309, 2007 WL 2681106, at *1 (D. Kan. Sept. 7, 2007) (holding that for purpose of Fed. R. Civ. P. 28(b) telephonic deposition has a location—wherever the witness is).

### B. Due Process

Legaspy claims in Count II that FINRA will deny him due process by holding a remote hearing. FINRA is a private corporation, not a state actor, and thus cannot be sued for violating the Fifth Amendment. *Lewis* v. *BNSF Ry. Corp.*, No. 14 C 7173, 2015 WL 4910794, at *6 (N.D. Ill. Aug. 17, 2015) ("Generally, the Fifth Amendment protects citizens from conduct by the

government, but not conduct by private actors . . . ." (quotation marks omitted)). The Seventh

Circuit has suggested as much in strong *dicta*:

> The fact that the NASD is subject to 'extensive and detailed' governmental
> regulation does not necessarily convert that organization's actions into those of the
> state. Indeed, although we have not expressly ruled on the question of whether the
> NASD is a state actor, we have previously expressed doubt about 'the proposition
> that the comprehensive regulation of securities exchanges by the federal
> government would turn those exchanges into governmental actors.' In addition,
> several of our Sister Circuits have reached the conclusion that the NASD is not a
> state actor.

*Otto* v. *SEC*, 253 F.3d 960, 965 (7th Cir. 2001) (citations omitted). The Seventh Circuit thus

likely would agree with what appears to be the unanimous opinion of the other circuits that

FINRA is not a state actor. *See, e.g.*, *Santos-Buch* v. *FINRA*, 591 F. App'x 32, 34 (2d Cir. 2015)

("FINRA is not a state actor that can be held to constitutional standards."). Because FINRA is

not a state actor, Legaspy is unlikely to succeed on its claim that FINRA has violated the Fifth

Amendment.

### B.    Irreparable Harm & Legal Remedies

A party dissatisfied with an arbitral award may petition to vacate it in federal court, thus

ordinarily providing a legal remedy for harms caused in arbitration. 9 U.S.C. § 10(a). But

Legaspy argues that he cannot vindicate that right if he is forced to arbitrate remotely starting

next week because he will face a cascade of financial consequences that will put him out of

business before he could file such a petition. Specifically, if he loses, FINRA will treat Insight as

undercapitalized and force it to maintain its accounts on a liquidation-only basis, effectively

shuttering Insight. Although economic consequences are ordinarily not considered irreparable—

as they may be compensated through damages—economic consequences so dire that they

destroy the plaintiff's business can be irreparable. *Girl Scouts of Manitou Council*, 549 F. 3d at

1089. The court assumes for purposes of this motion that Legaspy's claims in his declaration are true, and he will go out of business if he loses this arbitration.

But the harms of Legaspy's losing the arbitration are not at issue. Legaspy might lose no matter when the arbitration starts and how it is conducted. His risk of going out of business if the Claimants prove that he caused them $2.6 million in damages is no reason to stop them from pursuing their case. Nor is the risk that arbitrating might be expensive. *Trustmark Ins. Co.* v. *John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011) ("[D]elay and expense of adjudication are not 'irreparable injury.'"). Legaspy must show that he will be irreparably harmed by being required to arbitrate remotely. Given how unlikely he is to succeed on the merits of his claims, he faces a higher burden to show irreparable harm. *Abbott Labs.*, 971 F.2d at 12.

The single line of reasoning he offers does not suffice. He says that "given the number of witnesses, the amount and nature of the documents, and the need for an interpreter and the complexity of the issues, a Zoom virtual hearing will deprive [Legaspy] of the ability to effectively defend against the claim being made." (Dkt. 5 Exh. 1 ¶ 15.) This is the only support for his oft-repeated line that he cannot present an effective defense over Zoom. (Dkt. 1 ¶¶ 18, 34, 46; dkt. 5 at 8.) Legaspy—who bears the burden of persuasion—cites no evidence that defenses cannot be presented remotely. He thus pits his conjecture against this court's experience holding several remote evidentiary hearings since the pandemic began (once with an interpreter), all of which permitted the parties to air their claims and defenses fully. Remote hearings are admittedly clunkier than in-person hearings but in no way prevent parties from presenting claims or defenses. Moreover, the court sees no reason why the Claimants would fare better than the respondent in a remote hearing. The Claimants will have the burden of proof in the arbitration; if

8

anything, the logistical challenges of a remote hearing is more likely to harm them. Legaspy has established, at most, that he would prefer not to arbitrate remotely, not that remote proceedings make it more likely that he will suffer any harms.

### C. Balance of Equities

Lastly, even if Legaspy could prove that he met the threshold requirements for a temporary restraining order, the equities are not in his favor. *Girl Scouts of Manitou Council*, 549 F.3d at 1086. Legaspy argues that the temporary restraining order would minimally burden FINRA. But an order holding that FINRA cannot conduct hearings remotely would force it to choose between either holding in-person hearings that expose the arbitrators, Claimants, Legaspy, Insight, Pershing, and witnesses to COVID-19, or indefinitely delaying its hearings. In any event, FINRA and Legaspy are not the only interested parties. It would substantially burden the Claimants to enjoin the hearing. The Claimants argue that Legaspy has injured them to the tune of $2.6 million, and delaying the hearing delays their chance to make themselves whole.

Legaspy argues that delay is inevitable, emphasizing that if the panel cannot complete the hearing in its August sitting, it is so booked up that it must adjourn until February 2021 at the earliest. (Dkt. 5 Exh. 1 ¶ 13.) Thus, he asks, what is the harm in starting a little later? But this argument cuts both ways. If the parties start arbitrating on Monday, there is a chance that they will finish by February 2021. If they do not, however, the parties cannot even start until February 2021, to the significant prejudice of the Claimants, who will have to wait all that time for a chance to be compensated. Indeed, the delay will be effectively indefinite, because it is not clear when FINRA will be able to hold in-person hearings again, given the uncertainty around the pandemic.

Legaspy has another equitable problem: He delayed this action until the eleventh hour. Legaspy learned on June 25 that the August 17 hearing would be conducted remotely. Yet he did not file this action until August 11, with the temporary restraining order hearing set for August 12, five days before the hearing was scheduled to begin. The Claimants and FINRA arbitrators likely have invested substantial resources to prepare, and enjoining the hearing at this point would upend their preparation. *See Stokely-Van Camp, Inc.* v. *Coca-Cola Co.*, No. 86 C 6159, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987) (finding that delay of three months weighed against preliminary injunction).

In short, even if Legaspy met the threshold requirements, the equities would not come out in his favor. At the last moment, he asked the court to accommodate his preference for the conduct of arbitration by delaying indefinitely the resolution of his opponents' claim against him. Such a request does not meet the high bar for an injunction, let alone against a pending arbitration, which is immensely disfavored. *Trustmark*, 631 F.3d at 872; *AT&T Broadband, LLC* v. *Int'l Brotherhood of Electrical Workers*, 317 F.3d 758, 762 (7th Cir. 2003) ("[W]e have held it sanctionably frivolous to seek an anti-arbitration injunction." (citing *PaineWebber Inc.* v. *Farnam*, 843 F.2d 1050 (7th Cir. 1988) and *Graphic Commc'ns Union* v. *Chi. Tribune Co.*, 779 F.2d 13, 16 (7th Cir. 1986))).

## ORDER

The motions for temporary restraining order (dkt. 4) and preliminary injunction (dkt. 10) are denied.


Date: August 12, 2020

_____
U.S. District Judge Joan H. Lefkow